UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TRACY ANN O'NEIL,

                                    Plaintiff,

                -vs-                                    13-CV-575-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                                    Defendant.

_____

APPEARANCES:   LAW OFFICES OF KENNETH HILLER, Amherst, New York, for
               Plaintiff.

               WILLIAM J. HOCHUL, JR., United States Attorney (SIXTINA
               FERNANDEZ, Special Assistant United States Attorney, of Counsel),
               Buffalo, New York, for Defendant.


        This matter has been transferred to the undersigned for all further proceedings, by

order of Chief United States District Judge William M. Skretny dated August 6, 2014 (Item

14).

        Plaintiff Tracy Ann O'Neil initiated this action on June 3, 2013, pursuant to the Social

Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final determination of

the Commissioner of Social Security ("Commissioner") denying plaintiff's application for

Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI")

benefits under Title II and Title XVI of the Act, respectively.   Plaintiff has moved for

judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure

(*see* Item 8).   In response, the Commissioner has filed a memorandum of law and cross-

motion for judgment on the pleadings (*see* Item 11).   For the following reasons, plaintiff's

motion is denied, and the Commissioner's cross-motion is granted.

## BACKGROUND

Plaintiff was born on February 8, 1966 (Tr. 186).[1]  On March 29, 2010, she filed applications for SSDI and SSI alleging disability due to a skin condition known as hidradenitis suppurativa, carpal tunnel syndrome, depression, anxiety, obsessive compulsive disorder ("OCD"), compulsive skin picking, and heel spurs, with an onset date of October 1, 2007 (Tr. 179-89; 202-03).  The applications were denied administratively (Tr. 95-101).  Plaintiff then requested a hearing, which was held by videoconference before administrative law judge ("ALJ") Roxanne Fuller on August 29, 2011 (Tr. 61-86).  Plaintiff appeared and testified at the hearing, and was represented by counsel.  A Vocational Expert ("VE"), Marvin Bryant, also testified.

On October 18, 2011, the ALJ issued a decision finding that plaintiff was not disabled under the Act (Tr. 31-44).  Following the sequential evaluation process outlined in the Social Security Administration regulations (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ found that plaintiff had "severe" physical impairments (including hidradenitis suppurativa, cervical dystonia, carpal tunnel syndrome, and obesity) and "nonsevere" impairments (depression, anxiety, and cannabis abuse), but that these impairments, considered alone or in combination, did not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings")  (Tr. 33-34).  The ALJ discussed the medical evidence in the record, including progress notes and opinions from

---

[1]Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner as part of the answer in this action (Item 7).

treating and consultative medical sources, reports of diagnostic testing, plaintiff's hearing testimony regarding her complaints of pain and other symptoms, and the hearing testimony of the VE, and determined that plaintiff was able to perform her past relevant work as a toll collector.  Additionally, she had the residual functional capacity ("RFC") to perform light work[2] with additional exertional limitations (Tr. 43).  Relying on the VE's testimony indicating that an individual of plaintiff's age, education, work experience, and RFC with some limitations would be able to perform the requirements of a significant number of jobs existing in the national and local economies (Tr. 43), and using Rule 202.21 of the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "Grids"), as a framework for decision-making, the ALJ determined that plaintiff has not been disabled within the meaning of the Act at any time since the alleged onset date (Tr. 43).

The ALJ's decision became the final decision of the Commissioner on April 10, 2013, when the Appeals Council denied plaintiff's request for review (Tr. 1-6), and this action followed.

In her motion for judgment on the pleadings, plaintiff contends that the Commissioner's determination should be reversed because the ALJ's RFC determination was not based on substantial evidence in that the ALJ improperly based her decision on her own medical expertise.  Additionally, she argues that the ALJ failed to meaningfully consider the medical opinion evidence of record as to plaintiff's mental health functioning

---

[2]Light work involves lifting no more than 20 pounds occasionally, 10 pounds frequently, standing and/or walking for six hours in an eight-hour work day and sitting six hours in an eight-hour work day.  *See* 20 C.F.R. §§ 404.1567(b), 416.967(b); Social Security Ruling (SSR) 83-10. If someone can perform light work, the regulations provide that they can also perform sedentary work unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  *See* 20 C.F.R. §§ 404.1567(b), 416.967(b).

and improperly failed to order an intelligence examination of the plaintiff.  *See* Items 8-1,

13.  The government contends that the Commissioner's determination should be affirmed

because the ALJ's decision is based on substantial evidence.  *See* Item 11.

## DISCUSSION

### I.    Scope of Judicial Review

The Social Security Act provides that, upon district court review of the

Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if

supported by substantial evidence, shall be conclusive …."  42 U.S.C. § 405(g).

Substantial evidence is defined as evidence which "a reasonable mind might accept as

adequate to support a conclusion."  *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229

(1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v.

Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).  The substantial evidence test applies not only

to findings on basic evidentiary facts, but also to inferences and conclusions drawn from

the facts.  *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing

*Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision

is limited, and the reviewing court may not try the case *de novo* or substitute its findings

for those of the Commissioner.  *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of

Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012).  The court's inquiry is "whether the record,

read as a whole, yields such evidence as would allow a reasonable mind to accept the

conclusions reached" by the Commissioner.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th

Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. March 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted). Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations…."); *see Kohler*, 546 F.3d at 265. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will

5

not be disturbed so long as substantial evidence also supports it. *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013). "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying. *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

## II.   Standards for Determining Eligibility for Disability Benefits

To be eligible for SSDI or SSI benefits under the Social Security Act, plaintiff must present proof sufficient to show that she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). As indicated above, the regulations set forth a five-step process to be followed when a disability claim comes

before an ALJ for evaluation of the claimant's eligibility for benefits.  *See* 20 C.F.R.§§ 404.1520, 416.920.  First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity.  If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities...."  20 C.F.R. §§ 404.1520(c),  416.920(c); *see also* §§ 404.1509, 416.909 (duration requirement).  If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings.  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work.  If the claimant has the RFC to perform his or her past relevant work, the claimant will be found not to be disabled.  Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC.  *See Poupore v. Astrue,* 566 F.3d 303, 306 (2d Cir. 2009); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant meets this burden, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform.  *Lynch*, 2008

WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)).  "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience."  *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted).  If, however, a claimant has non-exertional limitations (which are not accounted for in the Grids) that "significantly limit the range of work permitted by h[er] exertional limitations then the grids obviously will not accurately determine disability status …."  *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted).  In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' "  *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

III.    **The ALJ's Disability Determination**

        In this case, ALJ Fuller determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since October 1, 2007, the alleged onset date (Tr. 33).  At steps two and three, as indicated above, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or equals the severity of any of the impairments in the Listings (Tr. 34).  At step four, the ALJ discussed the medical evidence of record and found that plaintiff was able to perform her past relevant work as a toll collector and had the RFC to perform light work as outlined in the regulations, with the following additional limitations: plaintiff must avoid moving machinery and exposure to unprotected heights, limitations on handling and fingering of small items,

8

and limitation to unskilled work (Tr. 42).  The ALJ also found that while plaintiff's medically determinable impairments could reasonably be expected to cause the pain and symptoms alleged, her "less than full credibility" regarding the intensity, persistence, and limiting effect of her symptoms did not warrant functional limitations greater than the restrictions outlined in the RFC assessment (Tr. 42).

Alternatively, at the final step, based on the testimony of the VE regarding the extent to which these limitations might erode the occupational base for unskilled light work, the ALJ determined that there are jobs existing in significant numbers in the national economy that plaintiff could perform, considering her age, education, work experience, and RFC (Tr. 43).

## IV.    Plaintiff's Motion

### A.    RFC Assessment

Plaintiff first contends that the ALJ's RFC assessment is not based on substantial evidence because the ALJ relied on her own interpretation of the raw medical data to determine plaintiff's RFC, thus substituting her lay opinion for that of a qualified medical professional.  Plaintiff faults the ALJ for giving "little weight" to certain aspects of the opinion of consulting examiner ("CE") Dr. Kathleen Kelley because she found them inconsistent with the objective medical record (Tr. 41).

An individual's RFC is his or her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2 (July 2, 1996)). In making an RFC assessment, the ALJ should consider "a claimant's physical

9

abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F.Supp.2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. July 6, 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd,* 370 Fed. App'x 231 (2d Cir. 2010).

Here, the ALJ discussed the medical records from plaintiff's treating physicians and the consultative examination of Dr. Kelley. Those records consistently show that plaintiff suffered from "mild" carpal tunnel syndrome (Tr. 323, 325), cervical dystonia (Tr. 409), and hidradenitis that was improving with treatment (Tr. 375). In her consultative examination in May 2010, Dr. Kelley noted diagnoses of depression, hidradenitis, questionable carpal tunnel syndrome ("CTS"), heel spurs "per claimant," obesity, and drug use (Tr. 334). Dr. Kelley noted plaintiff's normal gait and stance, the lack of assistive devices, full flexion of the cervical and lumbar spine, full rotary movement, full range of motion in the upper and lower extremities, intact hand and finger dexterity, 5/5 strength in all extremities, and no evident muscle atrophy or sensory deficits (Tr. 332-34). Plaintiff had no open sores and some scarring, but otherwise normal skin (Tr. 333). Dr. Kelley opined that repetitive activity with both hands would require comfort breaks, as would gross flare-ups of hidradenitis, "long walking or foot pedal work," and "[l]ifting, carrying, reaching for markedly heavy objects or pushing or pulling on markedly heavy objects" (Tr. 334). Additionally, Dr. Kelley stated that plaintiff "should be leery working with sharps" and should refrain from areas where she could catch an infection. *Id.*

While the ALJ stated that she gave "little weight " to Dr. Kelley's opinion, the ALJ's RFC determination, that plaintiff was able to perform light work with some limitations,  was largely consistent with Dr. Kelley's opinion and took into account many of Dr. Kelley's findings.  For example, Dr. Kelley stated that lifting, carrying, pushing, and pulling markedly heavy objects would require comfort breaks.  Light work only requires the frequent lifting of ten pounds.  Dr. Kelley stated that repetitive activity of both hands would require comfort breaks.  Recognizing plaintiff's "mild" CTS, the ALJ limited plaintiff to frequent gross manipulation with both hands and fine manipulation of items smaller than a paper clip (Tr. 35).  Recognizing her cervical dystonia, the ALJ limited plaintiff to light work while avoiding moving machinery and unprotected heights.  The ALJ gave little weight to Dr. Kelley's opinion that plaintiff should be leery of working with sharps and that walking and foot pedaling would require comfort breaks, as would flare-ups of hidradenitis. There was nothing in the medical records or even in Dr. Kelley's own examination that would require plaintiff to avoid walking or foot pedaling,[3] or to take any special precautions with regard to infection or sharp objects.[4]

An "ALJ cannot arbitrarily substitute his own judgment for a competent medical opinion." *Rosa v. Callahan*, 168 F.3d at 79 (citing *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983)).  However, the ALJ's RFC finding need not track any one medical opinion. *See Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013)

---

[3]  Plaintiff's treating physician noted in February 2010 that plaintiff's "lower extremities are painless and symptom free" (Tr. 267).  At the consultative examination in May 2010, plaintiff's gait and stance were normal, she had full strength in all lower extremities, and she had no difficulty in moving about during the consultative examination (Tr. 333-34)

[4]  In treating plaintiff's hidradenitis, Dr. Brass discontinued antibiotic use and counseled plaintiff in identifying the signs of infection (Tr. 376, 378, 380-81, 384).

(although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole).   There is no requirement that the ALJ accept every limitation in the opinion of a consultative examiner.   *See Pellam v. Astrue*, 508 F. App'x 87, 89 (2d Cir. 2013) (ALJ properly declined to credit certain conclusions in CE's opinion that were inconsistent with other evidence of record); *Cruz v. Colvin,* 2014 WL 4826684, *14 (N.D.N.Y. Sept. 29, 2014) (ALJ may credit some portion of a consultative opinion, while properly declining to credit those conclusions that are not supported by CE's own examination findings and inconsistent with other evidence of record).

Having reviewed the medical records, the court concludes that the ALJ largely adopted the medical source opinion of Dr. Kelley in the RFC determination.  Those specific aspects of the consultative opinion that were inconsistent with the objective medical evidence would not, in any event, have altered the RFC determination, and it was not error for the ALJ to give them "little weight." The ALJ did not substitute her own medical opinion for the opinions of the examining physicians, and the substantial evidence of record supports the ALJ's decision that plaintiff's impairments, singly or in combination, did not preclude her from performing a range of light work.

Plaintiff additionally argues that, having rejected the opinion of Dr. Kelley, the ALJ should have contacted plaintiff's treating physicians for an additional medical opinion regarding her RFC.  As noted above, the ALJ did not completely reject the opinion of Dr. Kelley, but merely gave little weight to certain specific limitations.  The Second Circuit has long recognized the proposition that, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the

12

claimant is represented by counsel ….” *Rosa v. Callahan*, 168 F.3d at 79 (internal quotation marks omitted).  This duty “includes assembling the claimant's complete medical history and recontacting the claimant's treating physician if the information received from the treating physician or other medical source is inadequate to determine whether the claimant is disabled …,” as well as “advising the plaintiff of the importance of such evidence.” *Batista v. Barnhart*, 326 F. Supp. 2d 345, 353 (E.D.N.Y. 2004).  Conversely, “where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.” *Petrie v. Astrue*, 412 F. App'x 401, 406 (2d Cir. 2011) (internal quotation marks omitted).  The Second Circuit also recently clarified that the ALJ's failure to request treating source opinions does not require remand “where, as here, the record contains sufficient evidence from which an ALJ can assess the [claimant]'s residual functional capacity.”  *Tankisi v. Comm'r of Social Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (citing *Moser v. Barnhart*, 89 F. App'x 347, 348 (3d Cir.  2004); *Scherschel v. Barnhart*, 72 F. App'x 628, 630 (9th Cir. 2003); *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)).

In this case, the record before the ALJ contained plaintiff's medical records which, as discussed above, indicate presentment and diagnoses of plaintiff's CTS, cervical dystonia, and hidradenitis, but no indication, particularly in the consultative examination, that these impairments severely limited her ability to do light work.  The ALJ “did not substitute her medical judgment for any physician's evaluation, but ... relied upon the substantial medical records and the testimony to reach a reasoned determination of the

plaintiff's work capacity." *Rodriguez v. Apfel*, 1998 WL 150981, at *11 n. 13 (S.D.N.Y. Mar. 31, 1998); *see also Matta v. Astrue*, 508 F. App'x at 56 ( ALJ "was entitled to weigh all of the evidence available to make [a] finding that was consistent with the record as a whole.").

Under these circumstances, the court finds that plaintiff is not entitled to reversal or remand on the grounds that the ALJ substituted her own judgment for competent medical opinion or failed to discharge her affirmative duty to develop the record by obtaining a treating source statement containing a medical opinion regarding plaintiff's RFC.

### B.    Plaintiff's Mental RFC

Plaintiff further argues that the ALJ failed to meaningfully consider the opinion of Susan Santarpia, Ph.D. who conducted a psychiatric consultative examination on May 25, 2010 (Tr. 326-30).  Dr. Santarpia diagnosed depressive disorder, NOS, anxiety disorder, NOS, and cannabis dependence abuse (Tr. 329).  Plaintiff was oriented, her mood was euthymic, concentration was intact, and she was coherent and goal-directed (Tr. 328). Plaintiff's intellectual functioning was estimated to be in the borderline range of abilities. *Id.*  Dr. Santarpia found that plaintiff was able to follow and understand simple directions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, make appropriate decisions, and relate adequately with others (Tr. 328-29).  Mild impairment was demonstrated with complex tasks and dealing with stress. The results of the evaluation were "consistent with psychiatric problems, but in itself does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis" (Tr. 329).

The ALJ found plaintiff's mental impairments to be non-severe and afforded the

opinion of Dr. Santarpia "great weight' (Tr. 34). Additionally, the ALJ concurred in the findings of the state agency review consultant (Tr. 33) who found only moderate impairment in plaintiff's ability to understand and remember detailed instructions, carry out detailed instructions, and respond appropriately to changes in the work setting (Tr. 364-65). The ALJ reflected these findings in the RFC determination, in which plaintiff was limited to simple, routine, repetitive tasks with one- to two-step instructions (Tr. 34).

Having reviewed the record and the ALJ's decision, the ALJ meaningfully considered the opinion of Dr. Santarpia, giving the opinion great weight, and accepted the mental RFC findings of the state review consultant. The ALJ committed no error in the RFC, which reflected these medical opinions and limits plaintiff to simple tasks.

Finally, plaintiff argues that the AlJ should have ordered a consultative intelligence examination given the fact that Dr. Santarpia found her cognitive functioning to be in the borderline range of ability. A consultative examination is used to "try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the ALJ] to make a determination or decision" on the claim. 20 C.F.R. §§ 404.1519a(b), 416.919a(b). The decision to obtain a consultative examination is made on a case-by-case basis at the discretion of the Commissioner. *See* 20 C.F.R. §§ 404.1517, 404.1519–19b, 416.917, 416.919–19b. "It can be reversible error for an ALJ not to order a consultative examination when an examination is required for an informed decision ." *Tankisi v. Commissioner of Soc. Sec.*, 521 F. App'x at 32.  "However, an ALJ is not required to order a consultative examination if the facts do not warrant or suggest the need for it." *Id.* (citing *Lefever v. Astrue*, 2010 WL 3909487, at *7 (N.D.N.Y. Sept. 30, 2010), *aff'd*, 443 F. App'x 608 (2d Cir.2011)).

15

Here, the record does not support plaintiff's argument that an intelligence examination was necessary for an informed decision.  Although Dr. Santarpia estimated plaintiff's cognitive functioning as borderline, she concluded, nonetheless, that plaintiff retains the capacity to understand and follow simple instructions and directions, and perform simple tasks independently (Tr. 328).  Plaintiff earned a General Educational Development ("GED") degree in regular education classes and functioned in the workplace for several years (Tr. 195, 203). She is able to manage her personal and daily living needs independently, and manage her own funds (Tr. 217, 329).  Plaintiff's cognitive limitations, if any, are accommodated in the ALJ's assessment of her residual functional capacity (Tr. 34).  In sum, the record does not suggest any mental limitation requiring a consultative intelligence examination in order to make an informed decision.

## CONCLUSION

For the foregoing reasons, the court finds that the ALJ's decision is based on correct legal standards and supported by substantial evidence, and the Commissioner's determination must therefore be upheld.  Accordingly, plaintiff's motion for judgment on the pleadings (Item 8) is denied, the Commissioner's cross-motion for judgment on the pleadings (Item 11) is granted, and the case is dismissed.

The Clerk of the Court is directed to enter judgment in favor of the Commissioner, and to close the case.

So ordered.

\s\ John T. Curtin
_____
JOHN T. CURTIN
United States District Judge

Dated:   October 29, 2014